In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3002

United States of America,

Plaintiff-Appellee,

v.

Tyrone Hare,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:99 CR 45-02--Rudy Lozano, Judge.

Argued October 2, 2001--Decided October 22, 2001


   Before Posner, Easterbrook, and Evans,
Circuit Judges.

   Easterbrook, Circuit Judge.  Charged with
three federal crimes, Tyrone Hare made a
deal and pleaded guilty to one; as part
of the bargain the prosecutor dismissed
the other two and promised to recommend a
reduction of Hare's offense level if he
cooperated. For his part, Hare promised
among other things not to appeal from the
sentence. The district judge sentenced
Hare to 188 months' imprisonment after
denying him any reduction for acceptance
of responsibility. The judge concluded
that Hare had frivolously denied
responsibility for some of his deeds
(including relevant conduct), a
circumstance that had led the prosecutor
to withdraw support for a reduction.
Despite his promise not to do so, Hare
filed a notice of appeal, which the
United States asks us to dismiss.

   A waiver of appeal is valid, and must be
enforced, unless the agreement in which
it is contained is annulled (for example,
because involuntary). United States v.
Wenger, 58 F.3d 280 (7th Cir. 1995);
United States v. Jeffries, No. 00-2372
(7th Cir. Sept. 7, 2001). See also, e.g.,
United States v. Behrman, 235 F.3d 1049
(7th Cir. 2000); United States v.
Williams, 184 F.3d 666, 668 (7th Cir.
1999); United States v. Teeter, 257 F.3d

14, 23 (1st Cir. 2001) (collecting cases). Hare did not ask the district court to set aside his plea, and even on appeal he does not seek that relief; he wants the benefits of the agreement shorn of one detriment, an outcome to which he could not be entitled. He contends that the United States did not keep its promise to recommend a lower sentence, and this might have been a basis either to set aside the agreement or to order specific performance, but he never asked the district judge for either kind of relief. Instead he stored up arguments for appeal and now launches a blunderbuss attack on the very possibility of waivers as part of plea agreements--a nonstarter given that Hare wants to leave his plea in place and accept all of its benefits, and a bad legal argument even if it were open.

Appeal is a statutory entitlement. Hare believes that "public policy" forbids waiver of entitlements created by statute. But if this is so then the rest of the plea agreement--indeed, the entire institution of plea bargaining-- is invalid, because by pleading guilty a defendant waives dozens of statutory and constitutional rights. See Bousley v. United States, 523 U.S. 614 (1998); United States v. Broce, 488 U.S. 563 (1989); Mabry v. Johnson, 467 U.S. 504, 508 (1984). See also United States v. Mezzanatto, 513 U.S. 196 (1995) (approving waivers of trial rights by a defendant who pleaded not guilty). Yet defendants are free to waive their rights, to exchange them for other things that they value more highly. They exchange jury trials for lower sentences--and there is no reason why defendants cannot do the same with rights to appeal. An appeal requires the prosecutor's office to spend time researching the record, writing a brief, and attending oral argument. All of this time could be devoted to other prosecutions; and a promise that frees up time may induce a prosecutor to offer concessions. A defendant who values these concessions will waive his rights in order to obtain them. The process makes both society and the defendant better off. To make a given right ineligible for waiver would stifle this process and imprison the defendant in his privileges. Hare does not identify any part of the criminal process that the Supreme Court has declared off-limits to

waiver, and we see no reason why the right to appeal should be the first. It is not as if Hare were consenting to have his sentence determined by majority vote of a kindergarten class. Waiver of appeal, rather, means that the final decision will be made by one Article III judge rather than three Article III judges; all substantive entitlements are unaffected.

As for the contention that the waiver is not supported by consideration because the prosecutor did not promise to forego appeal: The prosecutor dismissed two out of three counts and promised to recommend a lower sentence if certain conditions were met. That's plenty of consideration for Hare's promises--and contract law does not require consideration to be broken down clause-by-clause, with each promise matched against a mutual and "similar" promise by the other side. United States v. Guevara, 941 F.2d 1299 (4th Cir. 1991), concluded that a defendant's waiver of appeal must be matched against the prosecutor's waiver of appeal. Why the defendant's waiver of appeal can't be matched against a lower sentence the court did not explain. Guevara dismissed an appeal by the prosecutor because the defendant had waived his right to appeal. This remedy is problematic, for United States Attorneys lack any right to control appeals by the United States, through plea agreements or otherwise; that right belongs to the Solicitor General. 28 C.F.R. sec.0.20(b). But the choice of remedy in Guevara is irrelevant once we reject, as we do, the idea that each of defendant's promises in a plea agreement must be supported by some particular (and "similar") promise by the prosecutor, as opposed to being supported by the overall consideration given for the plea.

Hare tells us that prosecutors refuse to enter plea agreements without waivers of appeal, and that as a result the agreement is a "contract of adhesion." The premise is false. This court resolves many appeals by defendants who pleaded guilty and did not waive their right to appeal decisions affecting the sentence. At oral argument the prosecutor said that his office always seeks waivers as a negotiating position, but that it makes some plea agreements without waivers when defendants refuse to consent. (Presumably

other terms are adjusted.) But what's wrong with a contract of adhesion anyway? Many contracts have standard terms that are not open to negotiation yet are routinely enforced. See, e.g., Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991) (enforcing a forum-selection clause that was included among three pages of terms attached to a cruise ship ticket); Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997) (enforcing an arbitration clause in a form contract). Someone who does not like the terms can refuse to accept them--in the commercial world by shopping with other vendors, in the world of criminal prosecution by spurning the offer and going to trial or entering a blind plea of guilty. Hare could have taken either course, but he elected instead to negotiate for terms, one of which was a waiver of appeal.

Although Hare contends that the prosecutor broke his promise to recommend a lower sentence, the waiver prevents us from considering that contention; Hare agreed that arguments of this sort would be conclusively resolved by the district judge. (As we have mentioned, Hare never presented this particular contention to the district judge, so he wouldn't have much to complain about on appeal even if the agreement had lacked a waiver.) There is, nonetheless, one established breach: Hare promised not to appeal, and he broke that promise. Defendants can obtain concessions in exchange for their promises in plea agreements only if those promises are credible. A defendant such as Hare who promises not to appeal, and then appeals anyway (requiring the United States to invest in the appeal the prosecutorial resources it sought to conserve), injures other defendants who plan to keep their promises, but can't distinguish themselves from those who sign with their fingers crossed behind their backs.

Dismissing the appeal is an essential but incomplete response, because the prosecutorial resources are down the drain, and dismissal does nothing to make defendants' promises credible in future cases. But there is another remedy: If the defendant does not keep his promises, the prosecutor is not bound either. This is established for broken agreements to cooperate. A defendant who promises as part of his plea agreement to provide

truthful information or testify in some other case, and who does not carry through, forfeits the benefits of the agreement, and the United States is free to reinstate dismissed charges and continue the prosecution. See United States v. Ataya, 864 F.2d 1324 (7th Cir. 1988); United States v. McCarthy, 445 F.2d 587, 591 (7th Cir. 1991) (dictum). Cf. Ricketts v. Adamson, 483 U.S. 1 (1987). So, too, with a defendant who promises not to appeal and then puts the prosecutor through the appellate process anyway. This remedy assists other defendants by enabling them to make believable promises not to appeal.

This appeal is dismissed on the basis of Hare's waiver of his entitlement to appeal. Hare's failure to keep all of the promises he made in the plea agreement has the potential to relieve the United States of its promises. As the United States has not asked for this relief, we give it 14 days to notify us whether it wants to reinstate the two dismissed charges.

So Ordered